98 F.3d 1346
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul SCHULZ; Deborah Savage, Plaintiffs-Appellants,
v.
Terry MILNE; City and County of San Francisco; Department
of City Planning; Department of Public Works;
and Bernal Heights East Slope Design
Review Board, Robert Passmore,
Defendants-Appellees.
 No. 95-15703.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 15, 1996.
Decided Oct. 3, 1996.
 
 1
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 In October 1992, Paul Schulz and Deborah Savage (the Schulzes) sued various defendants under section 1983 for delays in the approval of their application for a building permit in the Bernal Heights neighborhood of San Francisco. The permitting process dragged on for three years. The basic thrust of the Schulzes' complaint is that the defendants unconstitutionally delegated permitting power to a private neighborhood board and that, by virtue of this delegation and the length of the Schulzes' forced wait, the defendants temporarily "took" the Schulzes' property and violated their rights to equal protection and due process (both procedural and substantive). The district court dismissed all of these claims on statute of limitation grounds.
 
 
 4
 On appeal, the Schulzes contend: 1) the applicable one-year statute of limitations on their section 1983 claims did not begin to run until November 7, 1991 (so their October 1992 suit is not barred); 2) the statute was equitably tolled when they brought a tort claim against the City of San Francisco on April 30, 1992 under the provisions of the Tort Claims Act, Cal.Gov't Code § 900 et seq. (an issue first raised on appeal), and 3) this same tort claim statutorily tolled the statute of limitations under Cal.Gov't Code § 945.6 (an issue first raised in the reply brief).
 
 
 5
 The district court correctly dismissed the Schulzes' due process and equal protection claims on statute of limitation grounds. However, the statute has not begun to run on the takings claim even to this day. This claim will not ripen--and the statute will not begin to run--until final disposition of the Schulzes' parallel state court suit. Therefore, we reverse the district court's dismissal of the takings claim on statute of limitation grounds (a dismissal with prejudice) and remand for the district court to dismiss without prejudice on ripeness grounds. See Southern Pacific Transportation Co. v. City of Los Angeles, 922 F.2d 498, 500 (1990), cert. denied, 502 U.S. 943 (1991) (remanding for district court to dismiss unripe takings case without prejudice).
 
 
 6
 * A. Ripeness, statutes of limitations, and regulatory takings
 
 
 7
 The Schulzes' claim that San Francisco's permitting process as applied to them created a regulatory taking faces two imposing ripeness hurdles. First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding application of the regulations to the property at issue." Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 186 (1985). Second, because the Fifth Amendment proscribes takings without just compensation (rather than takings per se), "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.
 
 
 8
 For statute of limitation purposes, "[a] federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action." Norco Constr. Co. v. King County, 801 F.2d 1143, 1145 (9th Cir.1986). However, "[c]ourts have held consistently that a cause of action does not accrue until a party has a right to enforce the claim." Id. at 1146. Thus, the statute of limitations on a takings claim cannot begin to run until it has ripened. Id. at 114.
 
 
 9
 B. Ripeness and the Schulzes' takings claims
 
 
 10
 At the time the district court dismissed the Schulzes' takings claim on statute of limitations grounds, it was not ripe because the Schulzes had not been denied just compensation in the state courts. Therefore, the statute of limitations had not yet begun to run on this claim, and the district court erred when it concluded the claim was time-barred and dismissed with prejudice.
 
 
 11
 A plaintiff may bring a suit for inverse condemnation in California state court. This court has held that plaintiffs therefore have an adequate procedure to seek redress in California courts for deprivation of property. Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 164 (9th Cir.1993). The Schulzes' takings claim could not ripen until the final denial in the California courts of their inverse condemnation claim. Id.
 
 
 12
 At the time of the district court's dismissal, the California courts had not denied the Schulzes this relief. Therefore, their claim was not then ripe.
 
 
 13
 The Schulzes argue they should be excused from this requirement on two related grounds. First, they point out that they originally sued in state court--it was the defendants' removal that dragged this matter into federal court. Therefore, the second Williamson requirement should not apply. However, "[r]ipeness is a threshold jurisdictional question." Southern Pacific, 922 F.2d at 508. The defendants could not confer subject matter jurisdiction on the district court by removal.
 
 
 14
 The Schulzes also argue that Williamson merely requires that they seek compensation from the state and not receive it, not that the state deny such compensation. They sought compensation in state court but their efforts were frustrated by removal. Therefore, they have satisfied Williamson § second requirement.
 
 
 15
 Williamson, however, holds "the State's action is not 'complete' until the State fails to provide adequate compensation for the taking." 473 U.S. at 195 (emphasis added). California has not "failed" to compensate in this case.
 
 
 16
 After the dismissal in federal court, the Schulzes sued for inverse condemnation (among many other things) in state court. The parties inform us that the Schulzes are appealing an adverse verdict. Therefore, the state court action has not ended and their takings claim is still not ripe. We therefore remand this claim to the district court for dismissal without prejudice. Southern Pacific, 922 F.2d at 500.
 
 II
 
 17
 A. Ripeness and the due process and equal protection claims
 
 
 18
 The first ripeness requirement for a takings claim--a final decision by the relevant governmental authority--also applies to suits for violations of due process and equal protection related to regulation of land use. Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989).
 
 
 19
 The district court held that the necessary final decision in this case occurred no later than June 21, 1991--the day that Department of City Planning (DCP) staff approved the permit application and sent it on to the Bureau of Building Inspection (BBI). By contrast, the plaintiffs argue that the final decision occurred on November 7, 1991, when the Central Permit Bureau informed them they could pick up their notice on payment of the proper fee.
 
 
 20
 The district court and both parties rely on language in Norco to support their views:
 
 
 21
 In suits for wrongful deprivation of property under 42 U.S.C. § 1983, the same considerations that render a claim premature prevent accrual of a claim for limitations purposes, and the claim does not accrue until the relevant governmental authorities have made a final decision on the fate of the property. McMillan v. Goleta Water Distr., 792 F.2d 1453 (9th Cir.1986).
 
 
 22
 801 F.2d at 1146 (emphasis added).
 
 
 23
 The plaintiffs argue the relevant governmental authority was the Central Permit Bureau and that the final decision was the November 7 decision to issue the permit on payment of fees. They support this proposition with a variety of closely related arguments, including: 1) DCP staff lacked the power to make a final decision in that they could not grant the plaintiffs an enforceable right to a building permit, and 2) even after DCP staff approval, the plaintiffs were vulnerable to further delay because Zoning Administrator Passmore had the power to yank the permit before issuance (as he did in October 1989).
 
 
 24
 The plaintiffs' position has superficial formalistic appeal because in both Norco and Williamson (as well as innumerable other takings cases), the governmental body with the power to render a "final" decision for ripeness purposes has also been the body (typically a county zoning board of some sort) with the power to grant or deny permission with regard to how property may be used. DCP staff clearly lacked the power to authorize the Schulzes to go ahead with their building plans. Rather, DCP was only one of several agencies whose approval was necessary before the Schulzes could get a permit. In this sense, DCP staff approval was definitely not final.
 
 
 25
 However, the facts of this case distinguish it from the run of regulatory takings cases. In the typical case, the plaintiff blames the taking on the governmental body with the power to actually grant or deny permission to use property in a given way. In this case, although the plaintiffs name all sorts of defendants, they have not sought to prove wrongful delay by anyone but the DCP staff operating in collusion with the Design Review Board (DRB). They blame the DCP staff and the DRB. Examination of the ripeness rationale of the Williamson finality rule in light of this fact reveals that the district court was correct to hold that, for purposes of ripeness and the statute of limitations, DCP staff made the "final" decision in June 1991.
 
 
 26
 The existence of a regulatory taking turns largely on the degree to which a governmental entity imposes restrictions on a plaintiff's use of his property. If a court does not know the extent of these restrictions, it cannot determine if a taking has occurred. Therefore, in Williamson, the court held that a claim that application of regulations to property effects a taking is not ripe until "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." 473 U.S. at 193.
 
 
 27
 In Norco, this court applied the final decision-ripeness requirement in the context of a temporary takings claim. Norco sought approval of a preliminary plat in May 1977. The county refused to act on the proposal, which conflicted with a proposed modification to the county's comprehensive plan. Under the compulsion of a writ of mandamus, the county council finally approved Norco's application on August 23, 1982. In February 1983, Norco sued in state court for tort, inverse condemnation, and violation of section 1983. Under section 1983, Norco alleged the county's failure to act on the preliminary plat application within the required 90-day statutory period denied Norco its rights to procedural due process and equal protection and deprived Norco of property without just compensation. The county removed. The district court dismissed the suit as untimely because it ruled the statute of limitations began to run on October 31, 1977, when the county held a meeting at which it declined to act on the application. The district court reasoned that by that time Norco had ample reason to know of the injury that was the basis for its action. Therefore, that was when its claim accrued and the statute began to run.
 
 
 28
 Citing Williamson, this court reversed because the claim was not ripe under the finality requirement until the county made its final decision approving the application in August 1982. The Norco court cited several rationales for applying the Williamson finality rule in the context of a claim of temporary taking due to arbitrary delay. "The duration of the wrongful taking may be relevant to determining whether a wrong has occurred, as well as the extent of the damage suffered." 801 F.2d at 1145. Also, "waiting for a final determination increase[s] the possibility of finding a mutually acceptable solution." Id. at 1146.
 
 
 29
 In light of the rationales behind Williamson and Norco, the district court was correct to hold that the Schulzes' claim was ripe when DCP staff approved the building permit application in June 1991 after the DRB had given its approval. Plaintiffs do not show that improper delay occurred after the June 1991 approval. As of that time, there would have been no reason to think that waiting for further action in the permitting process would have given a court necessary information as to the nature or duration of the Schulzes' DCP-caused injury.[1] Nor would there have been any reason to think the parties could have somehow compromised in the permitting process in a way that would have undone the Schulzes' claimed three-year injury and eliminated their urge to sue.
 
 
 30
 Application of the Norco rationales therefore indicates the equal protection and due process claims ripened and the statute began to run in June 1991, not November 1991. The district court correctly ruled that these claims were time-barred by the time the Schulzes sued in October 1992.[2]
 
 III
 
 31
 We do not decide the equitable tolling issue because its proper resolution would require more factual development of the record. A-1 Ambulance Serv., Inc. v. County of Monterey, 90 F.3d 333 (9th Cir.1996); Bolker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir.1985).
 
 
 32
 The Schulzes first raised the statutory tolling issue in their reply brief. We may hear an issue first raised in a reply brief "when the appellee has not been misled and the issue has been fully explored." Ellingson v. Burlington Northern Inc., 653 F.2d 1327, 1332 (9th Cir.1981). We do not consider the statutory tolling argument fully explored.
 
 IV
 
 33
 We affirm the district court's dismissal on statute of limitations grounds of the Schulzes' due process and equal protection claims. However, the statute has not begun to run on the takings claim because it is not yet ripe. We reverse the district court's dismissal with prejudice of this claim and remand for the court to dismiss it without prejudice on ripeness grounds. Each side shall bear its own costs.
 
 
 34
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 *
 The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Schulzes would dispute this characterization by noting that Zoning Administrator Robert Passmore retained the power to recall the permit until it was issued. Therefore, he could have caused more delay, just as he did in October 1989. However, on May 22, 1991, the DRB--the ultimate source of the alleged delays--sent a letter to the Schulzes (and copied to Passmore) approving the project. The Schulzes give no reason why, in June 1991, they should have expected DCP staff to again renege on its approval of the application. Thus, after June 1991, any expectation of further delays would have been speculative
 
 
 [2]
 We reject the Schulzes' contention that they had no notice of the June 1991 DCP approval and that therefore the statute could not begin to run at that time. DCP staff member Pedro Arce declared that he remembered notifying the Schulzes of the decision. SER 271:699-70. Most significantly, Deborah Savage's phone messages contain a June 24 entry stating, "Planning Dept.--approved on Fri." The name "Pedro Arce" appears next to this entry. SER 272:704
 The cases the Schulzes cite for the proposition that this notice had to be in writing-- McCoy v. San Francisco, City and County, 14 F.3d 28 (9th Cir.1994), and Hoesterey v. City of Cathedral City, 945 F.2d 317, 320 (9th Cir.1991)--are not on point.